**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CII PARENT, INC.,[1] | Case No. 22-11345 (LSS) |
| Debtor. | Ref. Docket No. 3 |

**OBJECTION OF TWIN BROOK CAPITAL PARTNERS, LLC, AS AGENT, TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING THE TIME TO FILE (A) SCHEDULES OF ASSETS AND LIABILITIES AND (B) STATEMENTS OF INCOME AND FINANCIAL AFFAIRS**

Twin Brook Capital Partners, LLC, in its capacity as agent for the Lenders (in such capacity, the "Agent") under that certain Credit Agreement, dated as of May 15, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among parent guarantor CII Parent, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor"), the other Loan Parties (as defined therein), the financial institutions party thereto from time to time as "Lenders," and Agent (the Lenders and Agent, collectively, the "Lender Parties"), hereby files this objection (this "Objection") to the *Debtor's Motion for Entry of an Order Extending the Time to File (A) Schedules of Assets and Liabilities and (B) Statements of Income and Financial Affairs* [Docket No. 3] (the "Motion").[2] In support of this Objection, the Agent respectfully states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: CII Parent, Inc. (4706). The location of the Debtor's address is 21 Custom House Street, Boston, MA 02110.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

30043118.1

1

**PRELIMINARY STATEMENT**

1. On December 21, 2022, the Agent validly exercised proxy voting rights irrevocably granted by the Debtor in 2019 to appoint new, independent and non-conflicted boards of directors at the Debtor's lone direct subsidiary, Community Investors, Inc. ("Community Investors"), and certain of Community Investors' direct and indirect subsidiaries (together with Community Investors, the "OpCos"). Each such board is comprised of four independent directors who collectively have more than one hundred years of workout and operational experience plus the company's existing CEO.

2. A week later, on December 27, 2022 (the "Petition Date")—with no notice or previous discussion with the Lender Parties or their advisors—the Debtor commenced this chapter 11 proceeding. The Debtor is a mere shell with no operations, no employees and only one asset: bare legal title to the stock of Community Investors. Moreover, the Debtor has only one creditor—the Lender Parties—who currently hold a $73 million claim secured by all of the Debtor's assets. Other than an incomplete petition, the sole substantive documents the Debtor has filed to date is a list of equity holders and the Motion, which seeks more time to file the Statements, Schedules and SOFAs.

3. This seemingly routine and innocuous request is, in reality, specious. The Debtor claims that (i) it has had insufficient time to complete the Statements, Schedules and SOFAs because "[t]he Debtor is presently in the process of negotiating a resolution regarding the control of the Applicable Subsidiaries" with the Agent, and (ii) that more time would "not prejudice or adversely affect the rights of the Debtor's creditors and other parties-in-interest." Motion at ¶ 12. Both contentions are false. And even if they were true, the Debtor cannot establish cause.

2

**BACKGROUND**

4. On December 27, 2022, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with only a bare, incomplete petition that did not even include a list of creditors as required by Rule 1007-2(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). No pleadings of any kind, substantive or non-substantive, have been filed in the case to date other than the Motion. No request for the appointment of a trustee or examiner has been made in this case. No committees have been appointed or designated.

5. The OpCos are providers of end-to-end management software for homeowners' associations and related entities. The Debtor is a mere "shell" holding company that was contractually prohibited in the Credit Agreement from conducting operations, entering into agreements or owning any assets other than the stock of Community Investors.

6. As of the Petition Date, the Agent believes the Debtor had only one creditor, the Lender Parties, that are owed approximately $73 million in principal amount of loans arising under the Credit agreement (collectively, the "Loans").[3] The Loans and other obligations under the Credit Agreement are secured by, among other things, liens on all of the Debtor's assets and substantially all of the respective OpCo's assets pursuant to the terms of a Guarantee and Collateral Agreement, dated as of May 15, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Collateral Agreement"), by and among the Debtor, the OpCos, and the Agent.

---

[3] In addition to the Debtor, the loan parties under the Credit Agreement include Community Investors, Caliber Software, Inc., Investors Acquisition Co., AssociationVoice LLC, CapSure Acquisition Co., Real Pro Holdings, Inc., dwellingLIVE, Inc., iHomefinder, Inc., and AtHomeNet, Inc.

30043118.1

**OBJECTION**

7. The Motion should be denied. The Debtor concedes in its Motion that, pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), it was required to file its Statements, Schedules and SOFAs within fourteen (14) days after the Petition Date. *See* Motion at ¶ 9. While Rule 1007(c) of the Bankruptcy Rules and Local Rule 1007-1(b) permit the Court to extend the filing deadline for the Statements, Schedules and SOFAs, a debtor must establish that cause exists for that relief. The Debtor cannot do so. Accordingly, the Court should deny the Motion, or alternatively, impose a shorter extension for filing the Schedules, Statements and SOFAs than the almost month-long extension requested by the Debtor.

8. The Debtor's main justification for the extension is that it is presently in negotiations with the Lender Parties. This is patently false. While the Agent has very recently engaged in discussions with the indirect equity holders of the Debtor and their advisor, Gordian Group ("Gordian"), ***it has not engaged in any substantive negotiations with the Debtor or its purported professionals since the Petition Date***. Indeed, in response to a direct question from Agent's counsel regarding who Gordian represents, Debtor's counsel confirmed that Gordian was engaged by the equity holders and the Debtor had no intention of retaining Gordian in the case.

9. However, even if the Debtor were having direct discussions with the Agent, those discussions—which, as the Court knows, occur in every chapter 11 case—cannot alone provide sufficient cause for an extension of the Rule 1007 deadline. As noted above, the Debtor is a mere shell, and has no employees or operations. It has only one asset, the stock of Community Investors, and only one creditor: the Lender Parties. The Debtor never explains why it needs more than six weeks after the Petition Date to complete its Statements, Schedules and SOFA when it has no

assets of its own and a solitary creditor. The Debtor's decision to omit this critical information from the Motion is as telling as it is troubling. Doing so leaves the Court with a decidedly incomplete picture of the facts necessary to evaluate whether cause exists. *Cf. In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) ("a half-truth…can be just as misleading, sometimes more misleading, than an absolutely false representation.").

10. Moreover, as a result of the Agent's proper prepetition exercise of voting proxy rights, ***the Debtor has had no involvement in the management or operation of the OpCos since a week before the Petition Date***. Since the Petition Date, the Debtor has filed one pleading: the Motion. Quite simply, it is difficult to imagine what this shell company is doing that distracts it from completing its extraordinarily simple Schedules, Statements and SOFAs. Certainly the Debtor does not need an additional month extension to do so.

11. The Debtor blithely asserts that the requested extension "will not prejudice or adversely affect the rights of the Debtor's creditors or other parties-in-interest." Motion at ¶ 12. The Lender Parties disagree. As the sole creditor in the Debtor's estate, the Lender Parties have serious concerns about the pendency of this case and the motivations therefor, and question that it was filed in good faith and for a valid reorganization purpose. In order for the Lender Parties to appropriately formulate their response to the filing of this chapter 11 case and any future relief sought by the Debtor, the Lender Parties need to understand the Debtor's position on what its assets, liabilities, creditors are, as well as the other information contained in the Schedules and Statements. Likewise, the Agent respectfully submits that the Court also needs to know the composition of this estate, including whether indeed the Lender Parties are the only creditor, as it considers to whom the Debtor owes duties and adjudicates any further relief requested by the

Debtor or the Lender Parties. The prejudice to the Lender Parties is exacerbated by the fact that the Debtor failed to include in its petition a list of creditors as mandated by Local Rule 1007-2(a).

## **CONCLUSION**

WHEREFORE, for the reasons stated above the Agent respectfully requests that the Court (a) deny the Motion, or, in the alternative, grant a shorter extension, and (b) grant such other relief as the Court deems just and proper.

Date: January 13, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kara Hammond Coyle*
James P. Hughes, Jr. (No. 3102)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
James M. Yoch, Jr. (No. 5251)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email:  jhughes@ycst.com
        mnestor@ycst.com
        kcoyle@ycst.com
        jyoch@ycst.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
Peter P. Knight (*pro hac vice* admission pending)
Terence G. Banich (*pro hac vice* admission pending)
Allison E. Yager (*pro hac vice* admission pending)
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Email:  peter.knight@katten.com
        terence.banich@katten.com
        allison.yager@katten.com

*Counsel for Twin Brook Capital Partners, LLC, as Agent*

30043118.1

6