# **EXHIBIT B**

**Glenn Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>CII PARENT, INC.,<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 22-11345 (LSS)<br>)<br>)<br>)<br>) |

### DECLARATION OF ANDREW K. GLENN IN SUPPORT OF APPLICATION OF DEBTOR CII PARENT, INC. FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLENN AGRE BERGMAN & FUENTES LLP AS COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE

I, Andrew K. Glenn, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.    I am the managing partner of Glenn Agre Bergman & Fuentes LLP ("Glenn Agre"). I am an attorney at law duly admitted to (i) the bar of the State of New York; (ii) the United States District Court for the Southern District of New York; (iii) the United States Court of Appeals for the First Circuit; and (iv) the United States Court of Appeals for the Second Circuit.    No disciplinary proceedings are pending against me.

2.    I submit this declaration (the "Declaration") in connection with the application (the "Application")[1] of CII Parent, Inc. (the "Debtor"), the debtor and debtor-in-possession in this Chapter 11 case (the "Chapter 11 Case"), for authorization to retain and employ Glenn Agre as its counsel *nunc pro tunc* to the Petition Date, at its normal hourly rates in effect from time to time and in accordance with its normal reimbursement policies, and to provide the disclosures required under Sections 327 and 328 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). This Declaration is contemplated by Section D.1 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Glenn Agre's completion of further review, or as additional information regarding parties-in-interest becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

## **GLENN AGRE'S QUALIFICATIONS**

4.      Glenn Agre is a national law firm with its principal office in New York, New York, and a second office in San Francisco, California. The Debtor has selected Glenn Agre as its counsel because of Glenn Agre attorneys' extensive experience and knowledge in the field of debtors' and creditors' rights, business reorganizations, and their expertise, experience, and knowledge practicing before bankruptcy courts, including this Court.

5.      Attorneys at Glenn Agre have served as counsel to debtors, trustees, creditors' committees and creditors in many large bankruptcy proceedings. *See, e.g.*, *In re MTE Holdings, LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del. 2019) (counsel for debtors); *In re Borders Group, Inc.*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. 2011) (counsel for debtors); *In re Ninety-Five Madison Company, L.P.*, Case No. 21-10529 (DSJ) (Bankr. S.D.N.Y. 2021) (counsel to debtor); *In re LATAM Airlines Group S.A., et al.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. 2020)

(counsel for ad hoc committee of shareholders); *In re The Hertz Corporation*, *et al.*, Case No. 20-11218 (MFW) (Bankr. D. Del. 2020) (counsel for ad hoc committee of shareholders); *In re Garrett Motion Inc.*, *et al.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. 2020) (counsel for official committee of equity securities holders); *In re Covia Holdings, Inc.*, Case No. 20-33295 (Bankr. S.D. Tex. 2020) (special counsel to creditors' committee); *In re Exco Resources*, Case No. 18-30155 (MI) (Bankr. S.D. Tex. 2018) (counsel for senior secured lenders); *In re SunEdison Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. 2016) (counsel for ad hoc committee of second lien lenders); *In re ESML Holdings Inc. et al.*, Case No. 16-11626 (BLS) (Bankr. D. Del. 2016) (counsel for official committee of unsecured creditors and unsecured creditor litigation trust); *In re Hercules Offshore, Inc., et al.*, Case No. 16-11385 (KJC) (Bankr. D. Del. 2016) (counsel for official equity committee); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. 2014) (counsel for ad hoc group of legacy noteholders); *In re Adelphia Communications Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. 2002) (counsel for official committee of unsecured creditors); and *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001) (counsel for various creditors).

6.      Accordingly, I believe Glenn Agre has the necessary capabilities and expertise to serve as counsel and deal effectively with many of the potential legal issues that may arise in the Chapter 11 Case.  Based on the foregoing, I believe Glenn Agre is both well qualified and uniquely able to represent the Debtor in an efficient and timely manner.

## SERVICES TO BE PROVIDED

7.      I have been advised by the Debtor that they wish to obtain Court approval of the retention and employment of Glenn Agre for rendering the following necessary legal services required in the Chapter 11 Case, including, among others:

3

a)      advise the Debtor in connection with its rights, powers and duties as debtor-in-possession in the continued management of its business;

b)      negotiate and prepare all necessary agreements, motions and other documents in connection with any debtor-in-possession financing and use of cash collateral;

c)      attend meetings and negotiate with representatives of creditors and other parties-in-interest;

d)      take necessary action to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor and representing the Debtor's interests in negotiations concerning litigation in which the Debtor is involved, including, but not limited to, objections to claims filed against the estate;

e)      prepare, on behalf of the Debtor, all necessary motions, applications, answers, orders, reports, and papers in support of positions taken by the Debtor and necessary to the administration of the estate;

f)      negotiate and prepare, on behalf of the Debtor, a plan of reorganization and all related documents;

g)      advise the Debtor in connection with any sale of assets;

h)      appear before this Court and any appellate courts in connection with the Chapter 11 Case; and

i)      perform other necessary legal services and provide other necessary legal advice to the Debtor in connection with the Chapter 11 Case.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

8.     The following information is provided pursuant to paragraph D.1 of the U.S. Trustee Guidelines:

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Answer**: No.

**Question**: Did any of the professionals included in this engagement vary their billing rate based on the geographic location of the bankruptcy case?

**Answer**: No.

**Question**: If you represented the client in the twelve (12) months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the twelve (12) months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: Glenn Agre's hourly rates are subject to periodic change in the ordinary course of business. On December 23, 2022, and prior to the Petition Date, the Debtor retained Glenn Agre. During its prepetition engagement, Glenn Agre's hourly rates were as follows:

| Partners | $950 - $1,250 |
|---|---|
| Associates | $475 - $825 |
| Paralegals | $325 |
| Senior Analysts | $375 |

On January 1, 2023, and as further explained in the Application, Glenn Agre instituted hourly rate increases firm-wide in the ordinary course of business. Glenn Agre's current hourly billing rates, which are charged the same for both bankruptcy and non-bankruptcy clients, are as follows:

| Partners | $1,000 - $1,500 |
|---|---|
| Associates | $625 - $1,075 |
| Paralegals | $325 |
| Senior Analysts | $375 |

**Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Answer**: The Debtor will be approving a prospective budget and staffing plan for Glenn Agre's engagement for the post-petition period as appropriate. In accordance with the U.S. Trustee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

## **GLENN AGRE'S DISINTRESEDNESS**

9.     Based on a conflicts search conducted by Glenn Agre and as described herein, to the best of my knowledge, neither Glenn Agre, nor any partner, including myself, counsel or associate, insofar as I have been able to ascertain, has any connection with the Debtor. Specifically, Glenn Agre obtained from the Debtor the names of individuals and entities that may be parties in interest in this Chapter 11 Case, and such parties are listed on **Exhibit 2**, attached

hereto.

10.     Glenn Agre has searched on its electronic database for its connections to the entities listed on Exhibit 2.  The search revealed no connection between Glenn Agre and any party listed on Exhibit 2.  The information listed on Exhibit 2 may have changed without Glenn Agre's knowledge and may change during the pendency of this Chapter 11 Case.  Accordingly, Glenn Agre will update this Declaration as necessary when Glenn Agre becomes aware of additional material information.

11.     In addition to the foregoing, through diligent inquiry, I have ascertained no connection, as such term is used in Section 101(14)(C) of the Bankruptcy Code and Bankruptcy Rule 2014(a), between Glenn Agre and (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") or any person employed by the Office of the U.S. Trustee, (ii) any attorneys, accountants, or financial consultants in the Chapter 11 Case, or (iii) any claimants or other parties in interest in the Chapter 11 Case.  I know of no other connections of Glenn Agre to the Chapter 11 Case.

12.     As part of its practice, Glenn Agre appears in cases, proceedings, and transactions involving many different creditors, shareholders, attorneys, accountants, financial consultants, investment bankers and other entities, some of which may be or may represent claimants and parties-in-interest in this Chapter 11 Case.  Glenn Agre does not represent any such entity in connection with this Chapter 11 Case or have a relationship with any such entity or professionals that would imperil its disinterestedness.

13.     In addition, if Glenn Agre has or hires professionals who worked at a prior firm on any matter in a material way for any party actually or potentially adverse to this Chapter 11 Case, Glenn Agre will procedurally "wall off" such professionals from those that work on this Chapter

11 Case.

14.     If Glenn Agre discovers additional information that requires disclosure, Glenn Agre will file a supplemental disclosure statement with the Court.

15.     Based upon the above, I believe that Glenn Agre is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code and that Glenn Agre, its partners, associates, and counsel are not creditors, equity security holders or insiders of the Debtor, and do not hold any interest adverse to the interests of its estate; are not and were not within two years before the commencement of the Chapter 11 Case, managers or employees of the Debtor or other parties-in-interest; and do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or this Chapter 11 Case, or for any other reason.

## PROFESSIONAL COMPENSATION

16.     Glenn Agre has agreed to receive compensation and reimbursement of expenses in accordance with its standard billing practices pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any procedures or orders of the Court as are applicable to this Chapter 11 Case.

17.     As noted herein, Glenn Agre's hourly billing rates on the Petition Date were as follows:

| | |
|---|---|
| Partners | $950 - $1,250 |
| Associates | $475 - $825 |
| Paralegals | $325 |
| Senior Analysts | $375 |

18.     Glenn Agre's hourly rates may change from time to time in accordance with Glenn Agre's established billing practices and procedures to reflect economic and other conditions, and,

7

generally, are adjusted in January of each year. Accordingly, on January 1, 2023, Glenn Agre

instituted hourly rate increases firm-wide in the ordinary course of business. Glenn Agre's current

hourly billing rates, which are charged the same for both bankruptcy and non-bankruptcy clients,

are as follows:

| Partners | $1,000 - $1,500 |
|---|---|
| Associates | $625 - $1,075 |
| Paralegals | $325 |
| Senior Analysts | $375 |

19.    The above-hourly billing rates (the "Hourly Rates") to be charged by Glenn Agre

for services to be rendered to the Debtor in this Chapter 11 Case shall be the same hourly billing

rates as charged to its other clients. The Hourly Rates are set at a level designed to compensate

Glenn Agre fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine

expenses. The Hourly Rates vary with the experience and seniority of the individuals assigned.

Glenn Agre will provide notice of any rate increases to the Debtor and the U.S. Trustee.

20.    Further, and consistent with Glenn Agre's policy with respect to its other clients,

Glenn Agre will charge the Debtor for reimbursement of costs, out of pocket expenses, and

disbursements incurred in the rendition of services. These include but are not limited to:

computerized research, travel, word processing, process service, and other costs, expenses, and

disbursements as set forth in the Engagement Agreement.

21.    Glenn Agre received a retainer in the amount of $400,000.00 (the "Initial

Retainer").[2] Glenn Agre was in receipt of the full amount of the Initial Retainer on December 27,

2022, which was the first possible business day payment could be made in light of the Christmas

---

[2]    The Debtor's equity sponsor, Falcon Structured Equity Partners, L.P., funded the Initial Retainer
because the Debtor did not have a cash management system, nor an operating bank account, as of
the filing of this Chapter 11 Case.

holiday.[3]  Pursuant to the Engagement Agreement, Glenn Agre agreed to receive $75,000.00 as a one-time, fixed fee for services Glenn Agre performed pre-petition (the "Pre-Petition Fee").  These pre-petition services, which occurred during the week and weekends of the Christmas and New Year holidays, required substantial, urgent work to prepare the Debtor's filing of this Chapter 11 Case.  Glenn Agre applied the Pre-Petition Fee against the Initial Retainer on December 27, 2022 and did not accept any other form of payment on behalf of work performed pre-petition.  The remaining total balance of the Initial Retainer is $325,000.00.

22.     Pursuant to Bankruptcy Rule 2016(b), Glenn Agre has no agreement with any other entity to share any compensation received by Glenn Agre, except as permitted under Section 504(b)(1) of the Bankruptcy Code.

### STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

23.     Glenn Agre intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this Chapter 11 Case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules governing professional compensation and reimbursement for fees and expenses charged. Glenn Agre will seek compensation for the services of each professional and paraprofessional acting on behalf of the Debtor in this Chapter 11 Case at the then-current rate charged for such services.  Glenn Agre also intends to make a reasonable effort to comply with U.S. Trustee requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and any interim and final fee applications to be filed by Glenn Agre in this Chapter 11 Case.

---

[3]     As noted in the Application, Glenn Agre entered into the Engagement Agreement on December 23, 2022.

## **COORDINATION WITH OTHER PROFESSIONALS**

24.     By separate application, Glenn Agre understands that the Debtor will also be seeking Court approval for the retention of Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as Delaware counsel to the Debtor.  The Debtor may also file motions or applications to employ additional professionals.

25.     Morris Nichols works, and will continue to work, under the direction of the Debtor and in close coordination with Glenn Agre.  It is anticipated that such coordination will greatly aid in the efficient and effective administration of this Chapter 11 Case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January 26, 2023

GLENN AGRE BERGMAN & FUENTES LLP

By: /s/ *Andrew K. Glenn*
     Andrew K. Glenn
     Managing Partner
     Glenn Agre Bergman & Fuentes LLP

## **EXHIBIT 1**

**Engagement Agreement**



Andrew K. Glenn
AGlenn@glennagre.com
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036

December 23, 2022

**By Email**

Mr. Thomas Radford
President
CII Parent, Inc.
c/o Onex Falcon
21 Custom House Street, 10th Floor
Boston, MA  02110

Re:      **Terms and Conditions of Engagement**

Dear Mr. Radford:

We are delighted that you have retained Glenn Agre Bergman & Fuentes LLP (the "Firm") to represent CII Parent, Inc. (the "Client"), as counsel for the Client in connection with the filing of a Chapter 11 case and other related matters.  As required by applicable rules, this letter establishes a common understanding between us about the terms and conditions of the engagement.  Please note that the Firm's representation is only of the Client; the Firm does not represent any shareholder, director, officer, partner, or joint venturer of the Client.

**General Terms.**  This engagement letter (the "Agreement") sets forth the terms of your retention of the Firm to provide legal services and constitutes an agreement between us.  The Agreement sets forth our entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters, except where we otherwise agree in writing (*e.g.*, by signing a different engagement letter).

**Personnel.**  I, along with Shai Schmidt, will be primarily responsible for this engagement. Other attorneys and legal assistants also will perform services during the course of this engagement.  We will involve such other lawyers and legal assistants employed by the Firm the extent that your needs make such involvement desirable and acceptable to you.

**Fees.**  The Firm will bill the Client for fees incurred at its regular hourly rates, which currently range from $1,000-$1,450 for partners and $300-$950 for associates and paralegals.  We reserve the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of the Client.  Although we may attempt, if requested by the Client, to estimate fees to assist you in your planning, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

**Expenses.**  Expenses related to providing services under this Agreement shall be included in our statements as disbursements advanced by us on your behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges,

**GLENN AGRE BERGMAN & FUENTES**

deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges. The Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers or contractors' charges, if any.

**Billing Procedures.**  Subject to any applicable rules and court orders, our statements for fees and expenses are typically rendered monthly and, unless other arrangements are made, payment in full is due upon receipt. We may adjust our billing cycle upon agreement with you. You may have the billing statement in any reasonable format you choose, but we will select an initial format for the statement unless you otherwise request in writing. Depending on the circumstances, however, estimated or summary bills may be provided during certain billing cycles, with supporting time descriptions and expense summaries to follow thereafter.

**Retainer.**  The Firm will be provided a retainer (the "Retainer") in the amount of $400,000, $75,000 of which shall by earned by the Firm upon receipt. The Client agrees to increase or replenish the Retainer upon receiving invoices from the Firm so that the Retainer amount remains at or above the Firm's estimated fees and expenses expected to be accrued and unpaid by the Client between payment cycles.

All but $30,000 of the Retainer will be placed into the Firm's general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these funds. You have no interest in the Retainer. This amount does not constitute a security deposit. The Firm will place $30,000 of the Retainer into a separate account to pay the fee for the filing of the Client's Chapter 11 Case (defined below), fees charged by the Office of the United States Trustee and other administrative costs of the Chapter 11 proceedings and as otherwise necessary for the Client to remain in good standing under governing Delaware law. Upon the termination of this Agreement, the Firm shall return any unused portion of the Retainer to the Client.

**Termination.**  The Firm's retention may be terminated by either the Firm or the Client at any time by written notice by or to you. Our representation will end at the earliest of (a) your termination of our representation, (b) our withdrawal, and (c) the substantial completion of our substantive work. We normally do not withdraw from a representation unless a client misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for us to continue to represent the Client, or unless other just cause exists. If permission for withdrawal is required by a court, we shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or our services are terminated for any reason, such termination shall be effective only to terminate our services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of our active involvement in a particular matter (even if we continue active involvement in other matters on your behalf), we will have no further duty to inform you of future developments or changes in law as may be relevant to such matter. Further, unless you and we mutually agree in writing to the contrary, we will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which we had been retained.

**GLENN AGRE BERGMAN & FUENTES** 

**File Retention.** All records and files will be retained and disposed of in compliance with our policy in effect from time to time. Upon your prior written request, we will return client records to you prior to their destruction. It is not administratively feasible for us to advise you of the closing of a matter or the disposal of records. We recommend, therefore, that you maintain your own files for reference or submit a written request for your client files promptly upon conclusion of a matter.

**Conflicts of Interest.** It is possible that one of our current or future clients may take positions adverse to certain positions of the Client (including in litigation or other dispute resolution mechanisms) in a matter in which the Firm may be retained. Subject to the rules pertaining to the Firm's retention as counsel for the Client in a Chapter 11 Case (as defined below), in the event a present conflict of interest exists between the Client and our other client or in the event one arises in the future, the Client agree to waive any such conflict of interest or other objection that would preclude our representation of another client in other current or future matters that are substantially unrelated to this representation of the Client. The Client also agrees that our representation is solely of the Client and that no member or other entity or person related to it (such as equity holders, directors, officers or employees) has the status of a client for conflict of interest purposes.

**Chapter 11 Case.** If and when the Client commences a case under Chapter 11 of the U.S. Bankruptcy Code ("Chapter 11 Case"), our ongoing employment by you will be subject to the approval of the court with jurisdiction over the petition. The Firm shall take the steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by you.

If necessary, we will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). We will give you a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in your application to the court to retain the Firm.

**No Guarantee of Success.** It is impossible to provide any promise or guarantee about the outcome of your matters. Nothing in this Agreement or any statement by our staff or attorneys constitutes a promise or guarantee.

**Miscellaneous.** This Agreement sets forth our entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. The party signing below is responsible for all obligations due us and represents that it has full authority to execute this Agreement so that it is binding. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.

**GLENN AGRE BERGMAN & FUENTES** 

We are not advising you with respect to this Agreement because we would have a conflict of interest in doing so.  If you wish to receive advice with respect to this Agreement, you should consult independent counsel.

**Dispute Resolution.** This agreement is governed by New York law (excluding its choice-of-law rules).  While we do not anticipate any disputes in our relationship, we are required under New York law to advise you that in the event a fee dispute arises, you have the right, in certain circumstances, at your election, to seek arbitration to resolve the fee dispute pursuant to Part 137 of the Rules of the Chief Administrator of the New York Courts.  Other than as provided in the preceding sentence, and subject to any rules and court orders in effect in any Chapter 11 Case, any disputes arising out of or relating to this agreement will be litigated only in the state or federal courts located in New York City.

\* \* \* \* \* \*

If the foregoing correctly reflects your understanding of the terms and conditions of the engagement, please so indicate by executing a copy of this letter agreement in the applicable signature block provided below.  We look forward to working with you on this matter.

Very truly yours,

**GLENN AGRE BERGMAN & FUENTES LLP**

By:_____
       Andrew K. Glenn
       Managing Partner

**CII PARENT, INC.**

By: _____
       Name:    Thomas Radford
Title:      President

## **Exhibit 2**

**Potential Parties in Interest**

**A.    All Non-Debtor Subsidiaries**

1. Community Investors Inc. d/b/a FRONTSTEPS
2. Investors Acquisition Co.
3. AtHomeNet, Inc.
4. AssociationReady, Inc.
5. AssociationVoice, LLC
6. 947893 B.C. Unlimited Liability Company
7. CapSure Acquisition Co.
8. Real Pro Holdings, Inc.
9. dwellingLive, Inc.
10. iHF, Inc.
11. Evercondo Holdings
12. Everapps, Inc.

**B.**     **Current Directors and Officers**
1. Thomas Radford
2. Brian Burke

**C.**    **Certain Former Directors and Officers**
1. Matt DeWolf
2. Troy Nguyen

**D.      Current or Known Major Shareholders**
1. Falcon Structured Equity Partners, LP
2. Honeywell International Inc. Master Retirement Trust
3. Twin Brook Capital Partners
4. Madison Capital Funding Co-Investment Fund LP
5. NXT Capital, Inc.
6. John Donaldson
7. Joseph Cheung
8. Seng Ming Tan
9. Ken Wilson

**E.**      **Top 50 Unsecured Creditors**

The Debtor has requested an extension of the time to file the Debtor's Statement of Financial Affairs and Schedules of Assets and Liabilities.  As of the filing of this Application, the Debtor is still collecting information concerning the Debtor's financial condition, and reserves the right to supplement this list of Potential Parties in Interest.

**F.      Significant Lenders/Trustees/Agents/Other Known Debtholders/etc.**
      1.   Twin Brook Capital Partners LLC

**G.    Restructuring Advisors to Certain Creditors and Other Potential Parties In Interest**

1.  Young Conaway Stargatt & Taylor, LLP
2.  Katten Muchin Rosenman LLP
3.  Choate Hall & Stewart LLP
4.  Gordian Group, LLC
5.  Cahill Gordon & Reindel LLP

**H.    Significant Depository Banks**

(Nonapplicable)

**I.**    **Significant Vendors of the Debtor**

(Nonapplicable)

**J.**     **Significant Contract/Lease Counterparties to the Debtor**

(Nonapplicable)

**K.**    **Significant Customers of the Debtor**

(Nonapplicable)

**L.** **Significant Taxing Authorities**

(Nonapplicable)

**M.**     **Significant Insurers**

     1.  CHUBB

**N.**    **Significant Ordinary Course Professionals**

(Nonapplicable)

**O.**    **Adversaries in Material Litigation**

    1.   Twin Brook Capital Partners LLC

**P.    U.S. Trustee, Judges, and Court Contacts for the District of Delaware**

1. **United States Bankruptcy Judges (Delaware)**
   a. Judge Ashley M. Chan
   b. Judge John T. Dorsey
   c. Judge Craig T. Goldblatt
   d. Judge Karen B. Owens
   e. Chief Judge Laurie Selber Silverstein
   f. Judge Brendan L. Shannon
   g. Judge J. Kate Stickles
   h. Judge Mary F. Walrath

2. **Office of the United States Trustee**
   a. Andrew R. Vara
   b. Angelique Okita
   c. Benjamin Hackman
   d. Christine Green
   e. David Buchbinder
   f. Denis Cooke
   g. Diane Giordano
   h. Dion Wynn
   i. Edith A. Serrano
   j. Hannah M. McCollum
   k. Holly Dice
   l. James R. O'Malley
   m. Jane Leamy
   n. Joseph Cudia
   o. Joseph McMahon
   p. Juliet Sarkessian
   q. Lauren Attix
   r. Linda Casey
   s. Linda Richenderfer
   t. Michael Panacio
   u. Nyanquoi Jones
   v. Ramona Harris
   w. Richard Schepacarter
   x. Rosa Sierra-Fox
   y. Shakima L. Dortch
   z. T. Patrick Tinker
   aa. Timothy J. Fox, Jr.