**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CII PARENT INC.,<br><br>           Debtor.[1] | ) <br> ) <br> ) Chapter 11 <br> ) <br> ) Case No. 22-11345 (LSS) <br> ) <br> ) <u>**Hearing Date**</u>: <br> ) **February 22, 2023 at 11:00 a.m. (ET)** <br> ) <u>**Objection Deadline:**</u> <br> ) **February 9, 2023 at 4:00 p.m. (ET)** |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b), FED. R. BANKR. P. 2014 AND 2016, AND DEL. BANKR. L.R. 2014-1 AND 2016-1, AUTHORIZING RETENTION AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS BANKRUPTCY CO-COUNSEL FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtor and debtor in possession (the "<u>Debtor</u>") in this chapter 11 case hereby submits this application (the "<u>Application</u>") for entry of an order, substantially in the form of which is attached hereto as **Exhibit A**, pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), authorizing the retention and employment of Morris, Nichols, Arsht & Tunnell LLP ("<u>Morris Nichols</u>") as bankruptcy co-counsel to the Debtor *nunc pro tunc* to the Petition Date (as defined below). In support of the Application, the Debtor relies upon and incorporates by reference (i) the *Declaration of Robert J. Dehney in Support of the Debtor's Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328(a),*

---

[1] The last four digits of Debtor CII Parent, Inc.'s tax identification number are 4706. The location of the Debtor's service address for purposes of this chapter 11 case is 21 Custom House Street, Boston, Massachusetts 02110.

*and 1107(b), Fed. R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1, Authorizing Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Bankruptcy Co-Counsel for the Debtor* Nunc Pro Tunc *to the Petition Date* (the "Dehney Declaration"), attached as **Exhibit B**, (ii) the *Statement of Morris, Nichols, Arsht & Tunnell LLP Pursuant to 11 U.S.C. § 329, Fed. R. Bankr. P. 2016 and Bankr. D. Del. L.R. 2016-1* (the "Rule 2016 Statement"), attached as **Exhibit C**, and (iii) the *Declaration of Thomas Radford in Support of the Debtor's Application for Entry of an Order Under 11 U.S.C. §§ 327(a), 328(a), and 1107(b), Fed. R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1, Authorizing Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Bankruptcy Co-Counsel for the Debtor* Nunc Pro Tunc *to the Petition Date* (the "Radford Declaration"), attached hereto as **Exhibit D**. In further support of the Application, the Debtor respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b), as supplemented by Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

3. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

4. On December 27, 2022 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed, and no request has been made for the appointment of a trustee or an examiner. Additional information regarding the Debtor's capital structure and the circumstances leading to the filing of this chapter 11 case is set forth in the *Debtor's Motion for Entry of an Order Enforcing the Automatic Stay and Granting Related Relief* (D.I. 12) (the "Stay Motion").

5. The Debtor has also retained Glenn Agre Bergman & Fuentes ("Glenn Agre") as bankruptcy counsel. Morris Nichols will coordinate with Glenn Agre to provide the Debtor with the highest level of service while minimizing duplication of efforts.

## RELIEF REQUESTED

6. The Debtor desires to retain and employ Morris Nichols as its bankruptcy co-counsel in this chapter 11 case. By this Application, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to retain and employ Morris Nichols as its bankruptcy co-counsel, *nunc pro tunc* to the Petition Date, to represent the Debtor in all phases of this chapter 11 case.

## BASIS FOR RELIEF

7. Under section 327(a) of the Bankruptcy Code, a debtor in possession may employ one or more attorneys to represent it in carrying out its duties under the Bankruptcy Code, provided that such attorneys are disinterested persons and do not hold or represent an interest adverse to the estate. Section 101(14) of the Bankruptcy Code defines "disinterested person" as one who

> is not a creditor, an equity security holder, or an insider; [or] is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

8.      Prior to the commencement of this chapter 11 case, the Debtor retained Morris Nichols to provide advice regarding, among other things, preparing for, commencing, and prosecuting this case under chapter 11 of the Bankruptcy Code. The Debtor has engaged Morris Nichols as its bankruptcy co-counsel in connection with the filing and, subject to the entry of an order approving the retention of Morris Nichols, the prosecution of this chapter 11 case.

9.      The Debtor seeks to retain and employ Morris Nichols because the firm's attorneys have extensive experience representing debtors in chapter 11 cases before this Court. Accordingly, Morris Nichols is well qualified to represent the Debtor as bankruptcy co-counsel.

10.     The Debtor requests approval of the employment of Morris Nichols *nunc pro tunc* to the Petition Date. Such relief is warranted because no other party is prejudiced by *nunc pro tunc* relief. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989).

### **SERVICES TO BE PROVIDED BY MORRIS NICHOLS**

11.     The Debtor believes that the services of Morris Nichols are necessary to enable them to faithfully execute their duties as a debtor in possession. Subject to further order of this Court, Morris Nichols will render the following professional services to the Debtor, in coordination with the Debtor's other advisor(s):

4

       a.    perform all necessary services as the Debtor's bankruptcy co-counsel, including, without limitation, providing the Debtor with advice, representing the Debtor, and preparing necessary documents on behalf of the Debtor in the areas of restructuring and bankruptcy;

       b.    take all necessary actions to protect and preserve the Debtor's estate during this chapter 11 case, including the prosecution of actions by the Debtor, the defense of any actions commenced against the Debtor, negotiations concerning litigation in which the Debtor is involved and objecting to claims filed against the estate;

       c.    prepare or coordinate preparation on behalf of the Debtor, as a debtor in possession, necessary motions, applications, answers, orders, reports and papers in connection with the administration of this chapter 11 case;

       d.    counsel the Debtor with regard to its rights and obligations as a debtor in possession;

       e.    coordinate with the Debtor's other professionals in representing the Debtor in connection with this case; and

       f.    perform all other necessary legal services.

12.    The Debtor believes that Morris Nichols's employment is in the best interests of the Debtor, its estate, and its stakeholders.

13.    Subject to this Court's approval of the Application, Morris Nichols is willing to serve as the Debtor's counsel and to perform the services described above.

**DISINTERESTEDNESS OF MORRIS NICHOLS**

14.    To the best of the Debtor's knowledge, information and belief, and except to the extent otherwise indicated in the Dehney Declaration, Morris Nichols does not hold or represent any interest adverse to the Debtor's estate or its creditors, and Morris Nichols is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

15.    Other than the Debtor, Morris Nichols does not, and has not, represented any entities in matters related to this chapter 11 case. Morris Nichols may represent or may have

represented certain parties with interests in the Debtor's case, on matters unrelated to this chapter 11 case. As set forth in the Dehney Declaration, Morris Nichols has conducted, and continues to conduct, research into its relations with the Debtor, the Debtor's substantial creditors and equity security holders, and other parties interested in this chapter 11 case. As part of this inquiry, Morris Nichols obtained the names of individuals or entities that may be parties in interest in this chapter 11 case (the "Potential Parties in Interest," attached to the Dehney Declaration as Schedule 1).[2] Morris Nichols then entered the names of Potential Parties in Interest into a computer database containing the names of all clients and conflict information concerning the clients of Morris Nichols.

16. This inquiry revealed that certain of the Potential Parties in Interest were current or former Morris Nichols clients (the list of such clients is referred to herein as the "Client Match List"). Current clients are listed on Schedule 2 attached to the Dehney Declaration and former clients are listed on Schedule 3 attached to the Dehney Declaration. Through the information generated from the above-mentioned computer inquiry, and through follow-up inquiries with Morris Nichols attorneys responsible for certain clients listed on the Client Match List, Morris Nichols determined that the representation of the clients on the Client Match List concerned matters unrelated to this chapter 11 case, except to the extent otherwise indicated in the Dehney Declaration. Although Morris Nichols values all of its clients, none of the entities listed on the Client Match List represents significant financial revenues for Morris Nichols.[3]

---

[2] The Debtor has requested an extension of the time to file the Debtor's Statement of Financial Affairs and Schedules of Assets and Liabilities. As of the filing of this Application, the Debtor is still collecting information concerning the Debtor's financial condition, and reserves the right to supplement the list of Potential Parties in Interest attached as Schedule 1 to the Dehney Declaration.

[3] None of the entities listed on the Client Match List represent greater than 1% of Morris Nichols's revenue over the last 2 years.

17. While Morris Nichols has undertaken, and continues to undertake, efforts to identify connections with the Debtor and other parties in interest, it is possible that connections with some parties in interest have not yet been identified. Should Morris Nichols, through its continuing efforts or as this case progresses, learn of any new connections of the nature described above, Morris Nichols will so advise the Court.

## COMPENSATION

18. In connection with this chapter 11 case, Morris Nichols was retained by the Debtor under an advance payment retainer pursuant to an engagement letter executed by the Debtor on December 26, 2022 (the "Engagement Agreement").

19. Prior to initiating this chapter 11 case, Morris Nichols received an advance payment retainer of $50,000.00 on December 27, 2022.[4] As a result, Morris Nichols currently holds a balance of $50,000.00 as an advance payment for services to be rendered and expenses to be incurred in connection with its representation of the Debtor (the "Advance Payment").

20. Morris Nichols has not been paid any other compensation by the Debtor within the ninety days before the Petition Date and Morris Nichols is not a creditor of the Debtor.

21. As promptly as practicable after all fees and charges that accrued prior to the chapter 11 case have been finally posted (the "Final Billed Amount"), Morris Nichols will issue a final billing statement (the "Final Billing Statement") for the actual fees, charges, and disbursements for the period prior to the chapter 11 case. The Final Billed Amount (net of payments received) shall be paid from the Advance Payment and the balance, if any, will be held as a postpetition advance payment to be applied against any unpaid fees and expenses approved by the Court with respect to Morris Nichols's final fee application in this case. As of the filing

---

[4] The Debtor's equity sponsor, Falcon Structured Equity Partners, L.P., was required to fund the Advance Payment because the Debtor did not have a cash management system, nor an operating bank account, as of the filing of the chapter 11 case.

7

of this Application, Morris Nichols estimates that the Final Billed Amount will be approximately $15,000.00.

22.　In this case, the Advance Payment held by Morris Nichols is appropriate. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation [and] . . . whether the retention, as proposed, is in the best interests of the estate . . ."). First, agreements regarding retainers are commonplace and "reflect normal business terms in the marketplace." *See id.* at 634. Second, the Debtor and Morris Nichols are sophisticated entities that have negotiated the Advance Payment at arm's length. Third, the Advance Payment is in the best interest of the Debtor and its estate because the Engagement Agreement and the Advance Payment allow the Debtor and Morris Nichols to maintain their prepetition relationship and assure continuity of legal advice and representation through the prosecution of this bankruptcy case. Thus, under the factors described by the *Insilco* court, the facts and circumstances of this case support the Court's approval of the Advance Payment.

23.　In addition, compensation for professional services rendered to the Debtor will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate, as detailed further in the Dehney Declaration. Subject to Court approval in accordance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and the orders of this Court, the Debtor proposes to compensate Morris Nichols for professional services rendered at its normal and customary hourly rates in effect from time to time as set forth in the Dehney Declaration.

24. Morris Nichols will also seek reimbursement for reasonable and necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

25. Morris Nichols intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

26. Morris Nichols intends to use its reasonable best efforts to comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "Appendix B Guidelines"). To that end, Morris Nichols provides the following statements in response to the request for additional information set forth in Part D.1. of the Appendix B Guidelines:

> **Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?
>
> **Response:** No.
>
> **Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?
>
> **Response:** No.
>
> **Question:** If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.
>
> **Response:** In connection with the chapter 11 case, Morris Nichols was retained by the Debtor pursuant to the Engagement Agreement dated December 23, 2022. The material terms of the prepetition

restructuring engagement are the same as the terms described in the Dehney Declaration.

For work performed for the Debtor in 2022, Morris Nichols's hourly rates were as follows:

| | |
|---|---|
| Partners | $800–$1,500 |
| Associates and Special Counsel | $485–$875 |
| Paraprofessionals | $360–$380 |
| Case Clerks | $195 |

As set forth in the Engagement Agreement, Morris Nichols has yearly, hourly rate increases.  As of January 1, 2023 Morris Nichols' hourly rates are follows:

| | |
|---|---|
| Partners | $825–1,595 |
| Associates and Special Counsel | $505–915 |
| Paraprofessionals | $375–395 |
| Case Clerks | $195 |

**Question:** Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:** Morris Nichols and the Debtor are working on a budget and staffing plan for the chapter 11 case.

## NOTICE

27. Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; and (ii) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated: January 26, 2023

*/s/ Thomas Radford*
Thomas Radford
President