**Exhibit A**
**Supplemental Guyette Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| CII PARENT, INC.,[1] | ) | |
| | ) | Case No. 22-11345-LSS |
| Debtor. | ) | |
| | ) | |

## SUPPLEMENTAL DECLARATION OF DREW GUYETTE

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: CII Parent, Inc. (4706). The location of the Debtor's address is 21 Custom House Street, Boston, MA 02110.

I, Drew Guyette, declare as follows:

1.      I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge or my review of books and records maintained by my employer, Twin Brook Capital Partners, LLC ("Agent"), as well as other documents and information prepared or collected by Agent's employees. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2.      I submit this declaration in support of the *Objection of Twin Brook Capital Partners, LLC, as Agent, to Debtor's Motion for Entry of an Order Enforcing the Automatic Stay and Granting Related Relief* (the "Objection"). Any capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

3.      Reference is also made herein to the *Motion of Twin Brook Capital Partners, LLC, as Agent, for Entry of an Order Dismissing or Abstaining from Hearing the Debtor's Chapter 11 Case* [Dkt. No. 30] (the "Motion to Dismiss"), as well as the *Declaration of Drew Guyette* (the "Guyette MTD Declaration"), which I submitted in support of and is attached as Exhibit B to the Motion to Dismiss.

4.      I am a Senior Partner and Chief Credit Officer at Agent, a direct lending finance company focused on providing cash-flow based financing for the middle market private equity community.

5.      A copy of what I believe to be a current corporate organizational chart of the Debtor and its affiliates is attached to the Guyette MTD Declaration as **Exhibit 1**. I understand that Community Investors directly or indirectly owns 100% of the other Non-Debtor Loan Parties, and that the Debtor is indirectly owned and controlled by affiliates of Falcon.

6.      Pursuant to the Credit Agreement (a true and correct copy of which is attached to the Guyette MTD Declaration as **Exhibit 2**), the Lender Parties provided the Prepetition Credit Facility to Community Investors and the other Non-Debtor Borrowers.

7.      The Debtor unconditionally guaranteed the Prepetition Credit Facility, as did AtHomeNet, an indirect subsidiary of Community Investors, pursuant to the Collateral Agreement (a true and correct copy of which is attached to the Guyette MTD Declaration as **Exhibit 3**).

8.      As of the Petition Date, the Debtor and the Non-Debtor Loan Parties jointly and severally owed the Lender Parties approximately $73.9 million in principal under the Prepetition Credit Facility, comprised of approximately $66.5 million in outstanding term loans and $7.4 million in outstanding revolving loans. The foregoing amounts do not include interest, fees, expenses and other amounts that are chargeable, payable or otherwise reimbursable under the Credit Agreement and the other Loan Documents, including costs and fees related to this Chapter 11 Case.

9.      Agent perfected its liens in the collateral granted under the Collateral Agreement by, among things, (i) filing UCC-1 financing statements against each Loan Party in its state of incorporation (a true and correct copy of the UCC-1 financing statement against the Debtor is attached to the Guyette MTD Declaration as **Exhibit 4**), and (ii) where applicable, obtaining possession of original stock certificates evidencing the Pledged Equity.

10.      In addition to the irrevocable proxies embedded in the Collateral Agreement, the Debtor and each other Loan Party (other than AtHome) also delivered to Agent an *Irrevocable Proxy Coupled with Interest* at the closing of the Credit Agreement in May 2019 (true and correct copies of which are attached to the Guyette MTD Declaration as **Group Exhibit 5**).

11.     On July 27, 2022, the Lender Parties and the Loan Parties entered into the Forbearance Agreement (a true and correct copy of which is attached to the Guyette MTD Declaration as **Exhibit 6**).

12.     In connection with the Forbearance Agreement, Falcon entered into a sponsor guaranty of up to $4 million of the Secured Obligations. Falcon's payment obligation under such guaranty was triggered upon the filing of the Debtor's bankruptcy case. On December 30, 2022, Agent delivered to Falcon a demand for payment due in full fifteen business days hence; however, to date Falcon has not made any payment on its guaranty in direct violation of its terms.

13.     One day after the expiration of the Forbearance Period, on November 16, 2022, Agent sent the Debtor and the other Loan Parties the Forbearance Termination Notice (a true and correct copy of which is attached to the Guyette MTD Declaration as **Exhibit 16**).

14.     In April 2021, the Loan Parties engaged GCA Advisors, LLC (later acquired by Houlihan Lokey ("Houlihan")) and at some point commenced a process to market and sell the Non-Debtor Loan Parties' businesses. Agent understands that the Loan Parties and Houlihan pursued transactions with at least three different potential buyers through May 2022, but each buyer walked away from the deal before signing a binding purchase agreement. The Lender Parties did not request or require that the Loan Parties pursue a sale at that time, and had no input regarding the choice of investment banker or the terms of its engagement, and had no involvement in the negotiations with potential buyers or their decisions to walk away from the deal.

15.     On December 18, 2022, I received an email from the Debtor's sole director, Thomas Radford (a true and correct copy of which is attached hereto as **Exhibit 18**) in which Mr. Radford stated that "the team is scratching their heads about why a forbearance is not forthcoming

. . . Please let us know if there's anything else we can do to help get this 30 day extension / renewal in place."

16.     The absence of a forbearance did not preclude the parties from continuing to negotiate over potential restructuring terms. Lenders, borrowers and sponsors routinely negotiate all manner of terms and transactions while actionable events of default exist.

17.     On December 21, 2022, Agent delivered the Pledge Exercise Notice (a true and correct copy of which is attached to the Guyette MTD Declaration as **Exhibit 17**) to each of the required notice parties under the Credit Agreement.

18.     To my knowledge, since December 21, 2022, the Non-Debtor Loan Parties have continued to operate in the ordinary course of business subject to the governance of the Independent Boards.

19.     The Independent Boards are comprised of four independent individuals who collectively have over 100 years of experience in operating businesses and managing workouts. None of the members of the Independent Boards is affiliated with any of the Lender Parties, and none of the Lender Parties holds any corporate governance, management or other roles with the Debtor or any of the other Loan Parties.

20.     The Non-Debtor Loan Parties, under the governance of the Independent Boards, have engaged separate legal counsel and, since the appointment of the Independent Boards, the Lender Parties have only interacted with the Non-Debtor Loan Parties on an arms-length basis consistent in all respects with a customary debtor-creditor relationship. The Independent Boards, not Agent, have full control and management authority of the Non-Debtor Loan Parties.

21.     Agent is aware that, following the appointment of the four independent directors on December 21, 2022, such directors appointed the Loan Parties' existing CEO as a fifth member of the Independent Boards.

22.     The Lender Parties are not compensating the members of the Independent Boards, and the members of the Independent Boards have not entered into any agreements with any of the Lender Parties regarding insurance, indemnification or any other matters related to their appointment as directors or the governance of the Non-Debtor Loan Parties.

23.     Since the exercise of proxy rights a week prior to the Petition Date, the Lender Parties have neither exercised any further proxy rights with respect to any Non-Debtor Loan Party nor taken any act to exercise collateral remedies, collect on their secured claims, or exercise control over the Non-Debtor Loan Parties.

24.     On January 23, 2023, at the request of the Non-Debtor Loan Parties, the Lender Parties entered into a *Second Forbearance Agreement*, pursuant to which, among other things, the Lender Parties gave the Non-Debtor Loan Parties access to additional revolving loan capacity and deferred certain principal and interest payments. This forbearance agreement imposed no additional covenants on the Non-Debtor Loan Parties other than customary access and information rights with respect to any business assessments completed by the companies' financial advisor.

Pursuant to 28 U.S.C. § 1746, I declare until penalty of perjury that the foregoing is true and correct.

Executed on January 27, 2023
      in Chicago, Illinois

*/s/ Drew Guyette*
Drew Guyette

**<u>Exhibit 18 to Guyette Declaration</u>**

**From:** Thomas Radford <TRadford@falconinvestments.com>
**Sent:** Sunday, December 18, 2022 8:05 PM
**To:** Tony Maggiore <tmaggiore@twincp.com>; Irene Wang <IWang@falconinvestments.com>
**Cc:** Drew Guyette <dguyette@twincp.com>
**Subject:** Re: [EXTERNAL] RE: Forbearance Request / To-dos

Tony, Drew,

Hope your weekends have gone well. Just thought I'd shoot one more email to you ahead of your IC discussion regarding our request for a 30 day forbearance renewal / extension to keep it top of mind.

As we discussed on Wednesday, we have been advised (and also believe) that a stable platform is necessary here in order to come to a solution. Further distracting management and spending resources on sponsoring the company without the good faith step of a forbearance is becoming untenable. We believe this is to your ultimate benefit, especially given we are amenable to paying or accruing a fee.

Just as importantly, we are very concerned about losing management here, and the longer this goes on without resolution the higher that risk becomes. Candidly, the team is also scratching their heads about why a forbearance is not forthcoming, and operating in this gray zone is extremely stressful for them (and us). Granting this request would be a strong demonstration that Twin Brook is fully committed to putting Frontsteps in the best position going forward.

A forbearance will help with the management team, and give us the time to roll up our sleeves on the terms of the restructuring - and the diligence work for your team.

As mentioned, we've been working hard on a deck for you that we think will be helpful in framing the go-forward plan and can share promptly upon a renewal of the forbearance. This is a unique situation, as are all of them, and I hope you understand why we're pushing for this here.

Please let us know if there's anything else we can do to help get this 30 day extension / renewal in place.

Best,

Tom

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.