**<u>Exhibit B</u>**
**Supplemental Maggiore Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | )  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CII PARENT, INC.,[1] | ) | |
| | ) | Case No. 22-11345-LSS |
| Debtor. | ) | |
| | ) | |

## SUPPLEMENTAL DECLARATION OF ANTHONY MAGGIORE

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: CII Parent, Inc. (4706). The location of the Debtor's address is 21 Custom House Street, Boston, MA 02110.

I, Anthony Maggiore, declare as follows:

1. I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge or my review of books and records maintained by my employer, Twin Brook Capital Partners, LLC ("Agent"), as well as other documents and information prepared or collected by Agent's employees. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the *Objection of Twin Brook Capital Partners, LLC, as Agent, to Debtor's Motion for Entry of an Order Enforcing the Automatic Stay and Granting Related Relief* (the "Objection"). Any capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

3. Reference is also made herein to the *Motion of Twin Brook Capital Partners, LLC, as Agent, for Entry of an Order Dismissing or Abstaining from Hearing the Debtor's Chapter 11 Case* [Dkt. No. 30] (the "Motion to Dismiss"), as well as the *Declaration of Anthony Maggiore* (the "Maggiore MTD Declaration"), which I submitted in support of and is attached as Exhibit C to the Motion to Dismiss.

4. I am a Director at Agent, a direct lending finance company focused on providing cash-flow based financing for the middle market private equity community.

5. The Non-Debtor Borrowers converted approximately $3.2 million in interest payments from cash pay to "payment-in-kind" from April 2022 through November 15, 2022.

6. The Loan Parties re-engaged Houlihan around April 2022 to market and sell the iHomefinder business. I understand that the iHomefinder segment of the Non-Debtor Loan Parties business focuses on providing a real estate search and marketing platform. Ultimately, the

1

iHomefinder sale process was unsuccessful. Aside from monitoring compliance with the Forbearance Agreement and receiving reports of matters related to the status of the sale process, the Lender Parties had no meaningful involvement in the iHomefinder sale process and had no involvement in discussions or negotiations with potential buyers.

7.    In November 2022, Agent learned from Falcon that the Loan Parties had also been pursuing a sale of their "HOA" business. Falcon later informed Agent that a potential HOA transaction had also fallen through prior to the interested party completing diligence. The Lender Parties neither requested nor mandated that the Loan Parties pursue a sale of the HOA business, and had no involvement in the discussions or negotiations with the potential buyer. Thereafter, Falcon and the Loan Parties informed Agent that no other meaningful sale opportunities existed.

8.    I understand that the HOA business relates to the provision of SaaS-based software products including portal management, accounting software, payment functionality, security services, and other ancillary products serving home owners associations.

9.    In the weeks leading up to the November 15, 2022 expiration of the Forbearance Period and for more than a full month thereafter, Agent engaged in good faith negotiations with Falcon and the Loan Parties in an effort to address the existing Events of Default and what Falcon repeatedly stated were increasing liquidity concerns at the company. During this period, the Lender Parties provided numerous proposals and detailed term sheets but none were acceptable to Falcon. Falcon, for itself and purportedly on behalf of the Loan Parties, also made multiple restructuring proposals that were not acceptable to the Lender Parties.

10.    As the negotiation process dragged on for many weeks and the risk of a short-term liquidity crisis (at least according to Falcon) loomed large, Agent took Falcon at its word that it would not agree—or permit the Loan Parties to agree—to restructuring terms even close to those

proposed by the Lender Parties or invest any further capital into the Loan Parties unless the Lender Parties agreed to subordinate or otherwise compromise their first-priority secured claims.

11. On multiple occasions during these restructuring discussions, representatives of Falcon and the Loan Parties advised Agent that the Secured Obligations materially exceeded the value of the Loan Parties. For example, during a call on November 1, 2022, Irene Wang, a Managing Director of Falcon and, at the time, a director of the Non-Debtor Borrowers, stated that the combined value of the Non-Debtor Loan Parties' businesses was $40-50 million. On a call on November 7, 2022, Ms. Wang stated that she estimated the Secured Obligations to be around 1.5 times the value of the Loan Parties. During the same call on November 7, 2022, Thomas Radford, the sole director of the Debtor (and who authorized the filing of the Chapter 11 Case), also asserted that it would not be possible to "sell the company for the value of the debt today."

12. During a call on November 23, 2022 with Agent, Ms. Wang stated that the combined value of the Loan Parties' businesses was worth just $40-50 million. During this call, Ms. Wang added that, if the Lender Parties would not agree to a deal involving the subordination of some portion of the Secured Obligations, Falcon would be just as well off filing the Loan Parties for bankruptcy.

13. At various points during this time period, Falcon and the Debtor requested that the Lender Parties enter into a new 30-day forbearance. In each instance, Agent refused to agree to any forbearance extension or agreement, but nevertheless expressed a willingness to continue good faith negotiations in the hope of reaching a consensual restructuring.

14. On December 5, 2022, Mr. Radford sent me an email "formally requesting a 30-day forbearance[.]" In response on December 6, 2022, I memorialized Agent's rejection of the

3

Debtor's forbearance requests in a reply email to Mr. Radford. The December 5-6, 2022 email chain is attached hereto as **Exhibit 2**.

15. On December 18, 2022, I received an email from Mr. Radford (a true and correct copy of which is attached hereto as **Exhibit 3**) in which Mr. Radford stated that "the team is scratching their heads about why a forbearance is not forthcoming . . . Please let us know if there's anything else we can do to help get this 30 day extension / renewal in place."

16. The absence of a forbearance did not preclude the parties from continuing to negotiate over potential restructuring terms. Lenders, borrowers and sponsors routinely negotiate all manner of terms and transactions while actionable events of default exist

17. Falcon repeatedly granted Agent permission to speak directly with management after expiration of the Forbearance Period and indeed invited such discussions in the weeks leading up to the Debtor's bankruptcy filing.

18. In the face of numerous failed sale attempts, several weeks of failed negotiations, repeated admissions by Falcon and the Debtor that the Lender Parties were materially undersecured, increasing liquidity concerns coupled with a lack of any commitment regarding a capital infusion by Falcon or any other outside party, and veiled threats about a needless bankruptcy, the Lender Parties concluded that the parties had reached an impasse on a consensual restructuring and that there was an increasing risk that Falcon could take action consistent with its self-interest but contrary to the best interests of the Loan Parties. Concerns also rose among the Lender Parties—in part due to statements made by Falcon and the Debtor—that the management of the Non-Debtor Loan Parties was growing anxious due to increasing liquidity concerns.

Pursuant to 28 U.S.C. § 1746, I declare until penalty of perjury that the foregoing is true and correct.

Executed on January 27, 2023
in Chicago, Illinois

*/s/ Anthony Maggiore*
Anthony Maggiore

**Exhibit 2 to Maggiore Declaration**

**From:** Tony Maggiore <tmaggiore@twincp.com>
**Sent:** Tuesday, December 6, 2022 2:10 PM
**To:** Thomas Radford <TRadford@falconinvestments.com>
**Subject:** [EXTERNAL] RE: Forbearance

Tom: We did connect today to discuss. Happy to connect over the phone live, but similar to my initial reaction this weekend our view remains that a forbearance is not needed to continue to advance discussions as well as a view that those negotiations should continue to proceed (we are in agreement there). Do not believe a forbearance would change that and this is not a situation where we typically provide a waiver or forbearance absent a specific framework that we were working towards (similar to our message earlier this year when we negotiated the last forbearance). Let me know if you'd like to connect live and I can ring you this afternoon to further explain our approach / perspective if needed.

Best,

Tony

**Tony Maggiore**
*Director*

<image001.png>

**Twin Brook Capital Partners**
111 South Wacker Drive | Chicago, IL 60606
Office: (312) 763-5133 | Mobile: (414) 559-6912
tmaggiore@twincp.com | www.twincp.com

**From:** Thomas Radford <TRadford@falconinvestments.com>
**Sent:** Monday, December 5, 2022 7:55 PM
**To:** Tony Maggiore <tmaggiore@twincp.com>
**Cc:** Irene Wang <IWang@falconinvestments.com>
**Subject:** Forbearance

> **CAUTION:** This email originated from outside of Angelo Gordon. Do not click links or open attachments unless you recognize the sender and verify the content is safe.

Tony,

I hope the holiday party and the rest of your weekend went well.

As we discussed, we are working hard to reach a negotiated outcome that works for Twinbrook as well as something that the board can live with. I hope that is clear from conversations you've been having with both me and Irene.

In order to achieve that, we are formally requesting a 30-day forbearance. As I mentioned during our call, we view this as normal course to getting everyone on the same timeline. Given the various requests from Twinbrook's end and the impact that will have on management's time, we believe a forbearance will enable everyone around the table to focus fully on a resolution of Frontsteps' capital structure and liquidity needs.

Counsel has advised that it is not a prudent exercise of our board duties to continue to push these discussions forward absent a forbearance or waiver - for the protection of Falcon, Twin Brook and frankly the Company.

Please let me know when you've had a chance to discuss internally. I'm sure we'd all like to avoid the distraction and costs associated with alternatives, and we want to focus on exploring a consensual path for the benefit of Twin Brook.

Best,

Tom

**Thomas Radford**
Managing Director
**ONEX FALCON**
600 Lexington Avenue, 20th Floor, New York, NY, 10022
+1 (212) 300-0200
TRadford@falconinvestments.com | www.onexfalcon.com

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.

**<u>Exhibit 3 to Maggiore Declaration</u>**

**From:** Thomas Radford <TRadford@falconinvestments.com>
**Sent:** Sunday, December 18, 2022 8:05 PM
**To:** Tony Maggiore <tmaggiore@twincp.com>; Irene Wang <IWang@falconinvestments.com>
**Cc:** Drew Guyette <dguyette@twincp.com>
**Subject:** Re: [EXTERNAL] RE: Forbearance Request / To-dos

Tony, Drew,

Hope your weekends have gone well. Just thought I'd shoot one more email to you ahead of your IC discussion regarding our request for a 30 day forbearance renewal / extension to keep it top of mind.

As we discussed on Wednesday, we have been advised (and also believe) that a stable platform is necessary here in order to come to a solution. Further distracting management and spending resources on sponsoring the company without the good faith step of a forbearance is becoming untenable. We believe this is to your ultimate benefit, especially given we are amenable to paying or accruing a fee.

Just as importantly, we are very concerned about losing management here, and the longer this goes on without resolution the higher that risk becomes. Candidly, the team is also scratching their heads about why a forbearance is not forthcoming, and operating in this gray zone is extremely stressful for them (and us). Granting this request would be a strong demonstration that Twin Brook is fully committed to putting Frontsteps in the best position going forward.

A forbearance will help with the management team, and give us the time to roll up our sleeves on the terms of the restructuring - and the diligence work for your team.

As mentioned, we've been working hard on a deck for you that we think will be helpful in framing the go-forward plan and can share promptly upon a renewal of the forbearance. This is a unique situation, as are all of them, and I hope you understand why we're pushing for this here.

Please let us know if there's anything else we can do to help get this 30 day extension / renewal in place.

Best,

Tom

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**

---

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**

---

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**

---

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**

---

**The content of this e-mail (including any attachments) is strictly confidential and may be commercially sensitive. If you are not, or believe you may not be, the intended recipient, please advise the sender immediately by return e-mail, delete this e-mail and destroy any copies.**